UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARK BERNARD JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00273-JRS-DLP |
| | ) |
| CRAIMER LT, | ) |
| GORE LT, | ) |
| THOMPSON LT, SIS, | ) |
| | ) |
| Defendants. | ) |

**Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment**

Plaintiff Mark Johnson, an inmate in federal prison, filed this action alleging that three correctional officers used excessive force against him. The defendants have moved for summary judgment arguing that Mr. Johnson's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Dkt. 71. Mr. Johnson has not responded, and the time to do so has passed.

Because Mr. Johnson's excessive force claim is not necessarily incompatible with his prison disciplinary conviction, the defendants' motion for summary judgment must be **granted** with respect to Mr. Johnson's allegation that defendant Gore placed him in a chokehold and **denied** with respect to his allegation that the defendants used excessive force against him when restraining him.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and

1

potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941−42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Mr. Johnson failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## I. Facts

The parties agree that several correctional officers used force against Mr. Johnson on May 15, 2018, at the Federal Correctional Complex in Terre Haute, Indiana. Dkt. 71-1 at 2, ¶ 5. But their descriptions of the incident diverge. Because there is minimal overlap between the two sides' accounts, the Court presents each separately.

### A. Mr. Johnson's Account

According to Mr. Johnson, he went into the Lieutenant's Office, sat down, and began to tell Lieutenants Thompson and Gore that he felt threatened and was afraid for his safety due to threats from staff. Dkt. 71-2 at 43:2–5. Mr. Johnson claimed that Lieutenant Gore responded by calling him a "pussy" to provoke him. *Id.* at 43:5–8. Mr. Johnson claimed that he replied, "[Y]es, I am a pussy, that's why I'm trying to [get] into protective custody." *Id.* at 43:9–10. Lieutenant Gore then ordered him to sit on the floor. *Id.* at 46:20. Mr. Johnson believed that Lieutenant Gore ordered him to sit on the floor to disrespect him and provoke him. *Id.* at 46:20–23. Mr. Johnson sat on the floor with his hands in his lap in a prayer position. *Id.* at 33:1–2; 46:24.

At that point, Lieutenant Gore walked behind Mr. Johnson, placed him in a chokehold, and began to drag him across the floor. *Id.* at 47:5–17. When he tried to get up, Lieutenants Thompson and Gore pushed him back down to the floor and, assisted by Lieutenant Kraemer and non-defendant Officer Kleptz, struck him repeatedly before taking him to the special housing unit (SHU). *Id.* at 47:18–60:13; dkt. 1 at 3. With respect to Lieutenants Thompson and Gore, Mr. Johnson described the assault as follows:

> [A]fter [Lieutenant Gore] put me in the chokehold and Lieutenant Thompson helped him restrain me or keep me to the floor, Lieutenant Gore immediately struck me at first, like, with both his knees. One knee on the right side—one knee on either side of my body and one on the other side of my body.
>
> Once Lieutenant Thompson had my legs in the air, Lieutenant Gore took his right— both his right and left hand, put them on my right—held onto my right arm down

3

> while he used his right knee to hold my left arm down right in the crank of my elbow, and then he just hopped up—like a hop up and down motion with his other knee and rammed it onto my chest and stomach.

Dkt. 71-2 at 50:12–25. He also testified that after he was handcuffed and shackled, Lieutenant Gore stood him up, dropped him back to the floor, and kneed him in the back again. *Id.* at 52:9–12. With respect to Officer Kraemer, who entered the office after the tussle had started, he described the assault:

> She witnessed Lieutenant Gore kneeing me and trying to hurt me, and she didn't stop him. She immediately joined in and just grabbed my legs and then started twisting my legs at a crazy angle before she started to knee me and punch me.

*Id.* at 53:18–23.

### B. Defendants' Account

According to the disciplinary report, Mr. Johnson entered a Lieutenant's Office to speak with Lieutenants Gore and Thompson. Dkt. 71-1 at 7. When Lieutenant Gore ordered Mr. Johnson to leave the office, Mr. Johnson clenched his fists and began to charge toward Lieutenant Gore, saying "I'm fucking you up." *Id.*

Lieutenant Gore took Mr. Johnson's arm to escort him out of the office, at which point Mr. Johnson attempted to spin around and lunge toward Lieutenant Gore. *Id.* At that point, Lieutenants Gore and Thompson, assisted by Officer Kleptz, placed Mr. Johnson on the ground to regain control of him.[1] *Id.* Lieutenant Thompson placed leg restraints on Mr. Johnson, and Officer Kleptz placed hand restraints on him. *Id.* Officer Kleptz then escorted Mr. Johnson to the SHU. *Id.* Lieutenant Gore and Officer Kleptz stated they used the "minimum amount of force necessary" to gain or maintain control of Mr. Johnson. *Id.* at 12 (Lieutenant Gore); 15 (Officer Kleptz).

Later that day, Lieutenant Gore wrote an incident report charging Mr. Johnson with

---

[1] The disciplinary report and supporting memoranda do not indicate that Officer Kraemer participated in restraining Mr. Johnson. *See* dkt. 71-1 at 6–20.

4

Prohibited Act Codes 224A, Attempted Assault, and 203, Threatening Bodily Harm. *Id.* at 3, ¶ 6.

Lieutenant M. Moorhead investigated the incident. *Id.* at 3, ¶ 7. Mr. Johnson gave the following statement for the investigation: "They jumped me! They kicked my ass! My face swole [sic] up!" *Id.* Based upon the evidence and the Incident Report, Lieutenant Moorhead concluded that Mr. Johnson was guilty of the charges and forwarded the Incident Report to the Unit Disciplinary Committee (UDC) and the Disciplinary Hearing Officer (DHO) for further action. *Id.* At his UDC hearing, Mr. Johnson pleaded not guilty, and the UDC referred the Incident Report to the DHO for disposition. *Id.* at 3, ¶ 8.

At the DHO hearing, Mr. Johnson denied the charges, providing the same account that formed the basis of this complaint. *Id.* at 6. He stated, "I did not want to be on the yard. I tried to go to SHU. The Lieutenant had me sit on the floor he put me in a chokehold. Then four other officers jumped in and I went to SHU." *Id.*

After considering the incident report, memoranda from staff, Mr. Johnson's disciplinary history (which showed a pattern of similar misconduct), and Mr. Johnson's statement, the DHO concluded that Mr. Johnson had committed Threatening Bodily Harm. *Id.* at 6–8. Mr. Johnson lost 27 days of good conduct time, plus 90 days of phone and commissary privileges. *Id.* at 8.

### III. Discussion

Mr. Johnson's claims are brought pursuant to the theory recognized in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C.

§ 1983 authorizes such suits against state officers . . . ." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005).

Mr. Johnson alleges that the defendants used excessive force against him. "The Eighth Amendment prohibits prison staff from subjecting inmates to excessive force without a legitimate penological purpose, [and] from deliberately failing to prevent other staff from using unlawful force . . . ." *Wilborn v. Ealey*, 881 F.3d 998, 1001 (7th Cir. 2018). The "core judicial inquiry," in an Eighth Amendment excessive force case, is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Factors relevant to the inquiry regarding whether the defendants' actions were done in a malicious and sadistic manner to cause harm "include the nature and extent of the harm, the need for force, the threat to the safety of staff and inmates, and the extent of the injury inflicted on the prisoner." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994).

The defendants argue that Mr. Johnson's excessive force claims are precluded by *Heck*, 512 U.S. at 486. A prisoner may not litigate a *Bivens* claim if judgment in his favor would "necessarily imply the invalidity of his" disciplinary conviction. *Id.*; *Edwards v. Balisok*, 520 U.S. 641, 645 (1997) (*Heck* applies to prison disciplinary convictions); *Hill v. Murphy*, 785 F.3d 242, 244 (7th Cir. 2015) (*Heck* applies to *Bivens* actions).

But excessive force claims are often consistent with associated prison disciplinary convictions, so *Heck* does not necessarily bar such claims. *See*, *e.g.*, *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). If a plaintiff's "suit rests on a version of the event that completely negates the basis for" his disciplinary conviction, *Heck* bars relief on the civil rights claim unless the

plaintiff first obtains a favorable resolution of the disciplinary conviction. *Tolliver v. City of Chi.*, 820 F.3d 237, 239 (7th Cir. 2016).

Mr. Johnson was found guilty of threatening bodily harm. The defendants argue that because Mr. Johnson (1) denies making the threat, clenching his fists, and charging toward Lieutenant Gore, and (2) asserts that the defendants made up the statements in the incident report to cover up their assault, his excessive force claim necessarily implies the invalidity of his disciplinary conviction and is thus barred by *Heck*. Dkt. 72 at 5–9. This is true with respect to Mr. Johnson's allegation that Lieutenant Gore, for no reason, approached Mr. Johnson from behind and placed him in a chokehold. To accept that Lieutenant Gore began choking Mr. Johnson unprovoked is incompatible with the DHO's conclusion that the officers used physical force against Mr. Johnson after he threatened Lieutenant Gore. But that use of force is severable from Mr. Johnson's claim that the defendants thereafter used excessive force in the process of restraining him. Mr. Johnson was not charged with resisting the officers, nor was he found guilty of attempted assault. Thus, whether the officers acted sadistically or maliciously once Mr. Johnson was on the ground and in the process of being handcuffed in no way affects his disciplinary conviction for threatening bodily harm.

In *Evans*, 603 F.4d at 363, officers alleged that Evans resisted arrest and had to be subdued, but Evans claimed he offered no resistance and was beaten both before and after the officers gained custody of him. Judge Easterbrook explained how Evans's protestation of innocence with respect to resisting did not defeat his excessive force claims in their entirety:

> Evans's situation illustrates how a fourth-amendment claim can coexist with a valid conviction. He contends three things: (1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody. (Evans says that his skull was fractured and his face mangled, leading to three surgeries and bone grafts. He also contends that his vision has been permanently impaired. These are

>not normal consequences of arrest.) Proposition (1) is incompatible with his conviction; any proceedings based on this contention must be stayed or dismissed under *Wallace* or *Heck.* But propositions (2) and (3) are entirely consistent with a conviction for resisting arrest. . . . These aspects of the suit can proceed.

*Id.* at 364 (internal citations omitted).

In this situation, the Court "must carve off any *Heck*-barred contentions and proceed with what remains" of the excessive force claim. *Mordi v. Zeigler*, 870 F.3d 703, 708 (7th Cir. 2017). Whether the amount of force used to restrain Mr. Johnson "was reasonable is a question that may be litigated without transgressing *Heck* or *Edwards*." *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008); *see also Evans*, 603 F.3d at 364 (noting "the plaintiff need not adopt the defendants' view of what occurred in order to contest the degree of force used."). And because a reasonable jury could find in Mr. Johnson's favor without effect on the disciplinary conviction for threatening bodily harm, summary judgment is not warranted on those claims.

### IV. Conclusion

The defendants' motion for summary judgment, dkt. [71], is **granted** as to Mr. Johnson's claim that Lieutenant Gore, unprovoked, placed him in a chokehold but **denied** as to Mr. Johnson's claim that the defendants used excessive force in the process of restraining him. This claim will be resolved by settlement or trial.

Mr. Johnson filed a motion in November 2020 seeking the Court's assistance with recruiting counsel. Now that this action has survived summary judgment, the Court reconsiders its order denying the November 2020 motion. That motion, dkt. [69], is **granted** to the extent that the Court will attempt to recruit pro bono counsel to represent Mr. Johnson in this action.

The parties **are directed** to contact the Magistrate Judge for purposes of scheduling a settlement conference prior to trial.

**IT IS SO ORDERED.**

Date: 8/12/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MARK BERNARD JOHNSON
15364-171
THOMSON USP
P.O. Box 1002
Thomson, IL 61285

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov